UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAWN ZACHERY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:22-cv-02261-JRS-MKK |
| ) | |
| JAVITCH BLOCK LLC, ) | |
| PALISADES ACQUISITION XVI, LLC, ) | |
| PALISADES COLLECTION, L.L.C., ) | |
| ) | |
| Defendants. ) | |

### Order

Plaintiff Dawn Zachery requests leave to file an amended complaint that, among other things, adds a claim of common law fraud, Dkt. [56]. Defendant Javitch Block LLC raises several arguments against the proposed addition of a common law fraud claim, calling it "futile." (Dkt. 61). As discussed below, Defendant's arguments against allowing leave to file an amended complaint are premature. Plaintiff's motion is **GRANTED**.

### I. Background

Plaintiff Dawn Zachery claims that Defendants Javitch Block LLC, Palisades Acquisition XVI, LLC, and Palisades Collection LLC have violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* According to Plaintiff, Defendants commenced legal proceedings to enforce judgments against Plaintiff and others similarly situated that had been brought by other, now dissolved entities, or what she has called "Dead Companies." (Dkt. 1-1 at 1). Defendants did so, Plaintiff

alleges, despite not having an assignment of the judgment and debt of these "Dead Companies" to Palisades Acquisition XVI, LLC. (*Id.* at 4-6). Plaintiff contends that Defendants avoided inquiry into this lack of assignment by changing the case caption to make "Palisades Acquisition XVI, LLC" the plaintiff without permission of the court, filing phony documents entitled "assignments," or simply continuing collection activities in the name of the Dead Companies. (*Id.* at 5).

Ms. Zachary alleges the following in her complaint. On May 14, 2004, a default judgment in the amount of $8,495.45 plus costs was entered in favor of "Great Seneca Financial Corporation" and against Ms. Zachary, in Marion Superior Court. (*Id.* at 4). And from 2006 to 2019, "[n]othing happened." (*Id.* at 5). Then in September 2021, Defendant Javitch Block LLC appeared on behalf of Defendant Palisades Acquisition XVI, LLC. (*Id.* at 5-6). Without leave of court or documentation of interest in the 2004 judgment, "Javitch Block LLC altered the caption on its appearance to read, 'Palisades Acquisition XVI, LLC v. Dawn Beutel-Zachery,' and commenced proceedings supplemental against her" for "an outstanding balance of $19,932.29," using that caption. (*Id.* at 6; *see also id.* at 67 ("Attachment H")). On October 26, 2021, an order prepared by Defendant Javicth Block LLC was entered for Ms. Zachary to appear for examination. (*Id.* at 6). On February 28, 2022, attorney Seth Row of Javitch Block LLC filed another appearance on behalf of Defendant Palisades Acquisitions XVI, LLC. (*Id.*). After her non-appearance, Defendant Javitch Block obtained an order on March 3, 2022 for interrogatories to be issued to Ms. Zachary's employer and obtained answer from

her employer on March 30, 2022. (*Id.*). Soon after, however, Ms. Zachery retained counsel, who filed a motion to strike the Javitch Block LLC's attorney's appearance on August 17, 2022, arguing that Palisades Acquisition XVI, LLC was not a party to the lawsuit. (*Id.*). That motion was granted August 31, 2022. (*Id.*). And, on October 20, 2022, Ms. Zachery filed this present action against Defendants Javitch Block LLC, Palisades Acquisition XVI, LLC, and Palisades Collection LLC on behalf of herself and other similarly situation based on the scheme just described. (Dkt. 1-1).

The scheme, according to Plaintiff, involved Defendant Palisades Collection, LLC, as an authorized agent of Defendant Palisades Acquisition XVI, LLC, arranging for law firms, such as Defendant Javitch Block LLC, to institute legal proceedings on debts supposedly owned by Palisades Acquisition XVI, LLC. (*Id.* at 3). Defendant Palisades Acquisition XVI, LLC had been transferred receivables acquired by Palisades Acquisition XV, LLC. (*Id.* at 4). Palisades Acquisition XV, LLC contracted with the Dead Companies in 2007 to buy "$6.9 billion in receivables . . . for a price of about $300 million." (*Id.*). It was those receivables that Defendant Palisades Acquisition XVI, LLC "assigned" Defendant Palisades Collection, LLC, "to service . . . directly or by hiring and supervising other debt collectors." (*Id.*). By March 2009, all of the Dead Companies had dissolved; yet according to Plaintiff, Defendants Palisades Collection, LLC and Palisades Acquisition XVI, LLC continued to "attempt[] to collect on numerous judgments in the name of the Dead Companies." (*Id.* at 4, 5). Plaintiff believed, citing to various cases around the country that had found "no valid assignment of specific accounts," that "Defendants

3

were aware that there were no assignments of the debts and the judgments." (*Id.* at ¶¶32, 33). And so she brought three claims against the Defendants for Fair Debt Collection Practices Act violations under 15 U.S.C. § 1692f, Indiana Deceptive Consumer Sales Act, IC 24-5-0.5-3, violations, and wrongful legal proceedings. (Dkt. 1-1).

Defendants removed the matter to this Court on November 22, 2022. (Dkt. 1). Soon after, pretrial deadlines were set. (*See* Dkt. 34 (allowing the parties to amend their pleadings by April 20, 2023)). During the course of discovery in this case, Plaintiff has learned more information about Defendants' alleged scheme. On April 11, 2023, Plaintiff moved for leave to file an amended complaint that incorporates the information learned throughout discovery. (Dkt. 56). Particularly, the alleged facts that:

> 35. The $6.9 billion in receivables sold by the Dead Companies to Palisades Acquisition XV, LLC were supposedly listed on a CD. On information and belief, this was the sole record that showed what the Dead Companies assigned to Palisades Acquisition XV, LLC.
>
> 36. In discovery in this matter, the Palisades Defendants have stated that the CD was discarded.
>
> 37. On information and belief, based on the dates of the above-cited decisions finding assignments of Dead Company debts to be absent, the CD has not existed for at least 6 years prior to the original filing of this action in Indiana state court on October 20, 2022.
>
> …
>
> 40. *To cover up, conceal, and avoid inquiry into the lack of assignments Defendants did the following*:
>
>> a. *Continued to engage in collection activities in the name of the Dead Companies, long after they were dissolved and had*

4

*no interest in the matter*. Engaging in such activities is a false representation that the Dead Company exists and is the party entitled to collect from the consumer.

b. Filed with courts and presented consumers with documents captioned "assignment" or "assignment of judgment," but which were merely affidavits by an employee of Palisades Acquisition XVI, LLC - the purported assignee - claiming that an assignment had been made. Such a document is not an "assignment."

c. Filed with courts and presented consumers with documents entitled "assignment" or "bill of sale," but which did not refer to the CD or attach any material from the CD. Typically such documents stated that Great Seneca (or another Dead Company) transferred to Palisades Acquisition XV, LLC, the accounts "attached hereto as Schedule 1" or "referenced on the attached Exhibit A." No "Schedule 1" or "Exhibit A" was ever provided. Schedule 1 or Exhibit A was the CD.

d. Claimed that the Dead Company had changed its name to Palisades Acquisition XVI, LLC.

e. *Simply changed the case caption*, on documents filed with courts and provided to consumers, *to refer to Palisades Acquisition XVI, LLC*.

…

54. There is no document (a) executed by Great Seneca, (b) referring to Ms. Beutel-Zachary's debt or the judgment against her and (c) transferring either, first to Palisades Acquisition XV, LLC, and then from Palisades Acquisition XV, LLC to Palisades Acquisition XVI, LLC. "

55. Because the CD no longer exists, there is no document (a) executed by a Dead Company, (b) referring to any debtor of the Dead Companies and (c) transferring the Dead Company's rights against such person to Palisades Acquisition XV, LLC, and then from Palisades Acquisition XV, LLC to Palisades Acquisition XVI, LLC.

(Dkt. 56-1 at 6-7, 8 (emphasis indicates language found in the original complaint)).[1]

Along with the incorporation of these new factual allegations, Plaintiff's proposed amended complaint adds an entirely new claim, Count IV, "Fraud." (*See id.* at 16-18). This proposed count incorporates the allegations in the preceding paragraphs and alleges as follows:

> 102. Defendants committed fraud on both the judgment debtors and the judicial system when they:
>
> a. Continued to engage in collection activities in the name of the Dead Companies, long after they were dissolved and had no interest in the matter. Engaging in such activities is a false representation that the Dead Company exists and is the party entitled to collect from the consumer.
>
> b. Filed with courts and presented consumers with documents captioned "assignment" or "assignment of judgment," but which were merely affidavits by an employee of Palisades Acquisition XVI, LLC - the purported assignee - claiming that an assignment had been made. Such a document is not an "assignment."
>
> c. Filed with courts and presented consumers with documents entitled "assignment" or "bill of sale," but which did not refer to the CD or attach any material from the CD. Typically such documents stated that Great Seneca (or another Dead Company) transferred to Palisades Acquisition XV, LLC, the accounts "attached hereto as Schedule 1" or "referenced on the attached Exhibit A." No "Schedule 1" or "Exhibit A" was ever provided. Schedule 1 or Exhibit A was the CD.
>
> d. Claimed that the Dead Company had changed its name to Palisades Acquisition XVI, LLC.

---

[1] The paginated numbers provided at the bottom of Plaintiff's Proposed Amended Complaint (Dkt. 56-1), do not correspond with the paginated numbers on the Docket. The undersigned has chosen to cite to the paginated numbers from the Docket.

> > e. Simply changed the case caption, on documents filed with courts and provided to consumers, to refer to Palisades Acquisition XVI, LLC.
>
> 103. Defendants acted in this manner for the wrongful purpose of concealing defects in the assignments and collecting money to which they were not entitled.

(*Id.* at 16-17).

On April 11, 2023, Plaintiff moved for leave to file an amended complaint that incorporates the information learned throughout discovery, refines the class definitions, stylistically updates the formatting of the complaint to match this federal forum (as this case was removed from state court), and adds Count IV, a claim for common law fraud. (Dkt. 56). Defendant Javitch Block LLC responded with opposition to only the latter amendment, the proposed Count IV fraud claim, on the grounds that the proposed amendment is "futile." (Dkt. 61).

## II.   LEGAL STANDARD

Rule 15 directs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008). By the plain terms of Rule 15(a)(2), coupled with the preference of deciding cases on the merits, see *Barry Aviation, Inv. v. Land O'Lakes Municipal Airport Com'n*, 377 F.3d 682, 687 (7th Cir. 2008), the Court enjoys plenty of discretion to grant leave to amend the pleadings, see *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 853 (7th Cir. 2022) ("As the text indicates, the rule favors amendment as a general matter."); *Pugh v. Tribune Co.*, 521 F.3d 686, 698 (7th Cir. 2008). "However, leave to amend is not automatically granted." *Geng v. Spencer*, 339 F.R.D. 252, 253

7

(S.D. Ind. 2021) (citing *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005); *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A court may deny leave to amend if the proposed amendment would be "futile."[2] *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 529 (7th Cir. 2022); *see also Tyler v. Captsone Logistics, LLC*, No. 1:21-cv-02137-JMS-TAB, 2022 WL 799097, *4 (S.D. Ind. Mar. 16, 2022) ("The forgiving nature of Fed. R. Civ. P 15(a)(2) does not circumvent the requirement that proposed amendments not be futile.").

The standard by which the "futility" of a proposed amendment is assessed depends on the posture of the case. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014); *see also Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 94-95 (N.D. Ill. 2008) (explaining the posture of the case influences the standard by which futility is assessed); 6 Wright & Miller, *Fed. Prac. & Proc. Civ.*, § 1487 (3d ed.) (updated Apr. 2023) (distinguishing different standards of futility). The party opposing the amendment to the pleadings has the burden to prove the amendment is futile. *Cox v. Sherman Capital LLC*, No. 1:12-cv-01654-TWP-MJD, 2014 WL 4370680, at *1 (S.D. Ind. Sept. 3, 2014).

### III. DISCUSSION

The question is whether Plaintiff's newly proposed fraud claim is futile. Defendant Javitch Block LLC raises multiple variations of "futility" arguments

---

[2] Of course, futility is but one factor to consider when ruling on a motion to amend. *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2015). Other "good reason[s]" to deny a motion to amend are "undue delay, undue prejudice, or bad faith." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, the only reason to deny presented by Defendant Javitch Block LLC is the futility of the proposed amendment adding a claim of common law fraud, (Dkt. 61), and the Court's considerations shall be limited only to what has been presented.

against Plaintiff's proposed fraud claim.[3] As Plaintiff points out in her reply, many of Defendant's "objections would be more appropriate in the context of a motion to dismiss." (Dkt. 64 at 1).

In fact, much of the briefing submitted by the parties gives weight to the adage that "the futility defense in a motion to amend is not a substitute for a motion to dismiss." *Mortgage Services III, LLC v. Montel*, No. 1:19-cv-3006-SEB-MPB, 2020 WL 13556099, at *2 (S.D. Ind. Mar. 27, 2020); *see also Chen v. Yellen*, No. 3:20-cv-50458, 2021 WL 5005373, at *2-3 (N.D. Ill. Oct. 28, 2021) (collecting cases). The Court, at this stage, finds little value in parsing the words of 1837 and 1888 Indiana jurists regarding principles of assigner/assignee law and redressability of the form by which choses in action are transferred, (*see* Dkt. 61 at 8 (citing *Caley v. Morgan*, 114 Ind. 350, 16 N.E. 790, 794 (1888); *id.* at 10 (citing *Slaughter v. Foust*, 4 Blackf. 379, 380 (Ind. 1837)). Despite Plaintiff suggesting that Defendant's arguments are misplaced at the outset of her reply, (*see* Dkt. 64 at 1 ("Its objections would be more appropriate in the context of motion to dismiss.")), she proceeded to use her reply to engage with Defendant's response on the merits of her claims rather than replying why the Court should grant her leave to file her amended complaint. The Court declines to embark on the premature (and potentially prejudicial) path and address the merits of Plaintiff's claims.

---

[3] The Court notes that none of Plaintiff's "technical changes," (Dkt. 64 at 1), has been opposed. Because the Court ultimately grants Plaintiff's motion for leave to file the proposed amended complaint as proposed, it need not dwell on parsing between what Plaintiff means by "technical changes" and anything else.

The question, at this posture, is whether the proposed amendment is frivolous on the amended complaint's face. To require otherwise would be contrary to the clear instruction of Rule 15 that leave be granted when "justice so requires." Fed. R. Civ. P. 15(a)(2). This case is in its early stages; this motion to amend was made within the deadlines to do so; this is Plaintiff's first motion to amend; and no dispositive motions have been filed. To hold a proposed amendment seeking to add a new claim to the standard of a dispositive motion clearly must be done in a new motion, not in response to the motion to add the new claim.

It has been said that the "purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utilities*, 410 F. Supp. 3d 943, 949 (S.D. Ind. 2019). And "the posture of the parties' briefs in a motion to amend, with the party seeking amendment filing the initial and reply, inverts the briefing that would typically occur in the context of a motion to dismiss." *Mortgage Services III, LLC v. Montel*, No. 1:19-cv-3006-SEB-MPB, 2020 WL 13556099, at *2 (S.D. Ind. Mar. 27, 2020); *cf. Saint Anthony Hosp. v. Eagleson*, 40 F.4th 492, 517 (7th Cir. 2022) (finding a denial of a "proposed amendment," in essentially this same procedural briefing posture, as "futile" amounts to an abuse of discretion). The Seventh Circuit case that is often cited for the principle dictating the "futility" analysis be conducted otherwise, *Runnion ex rel. Runnion*, relied on the fact that the motion to amend appeared in a demonstratively different posture.

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519-23 (7th Cir. 2015) (denial of leave to amend after motion to dismiss); *Allen*, 41 F.4th at 854 (discussing *Runnion*, its progeny, and relevant posture). There are no "deficiencies" for this proposed amended complaint to "correct," *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014), so holding the proposed amendment to that heightened standard would run counter to what "justice so requires" at this posture. Fed. R. Civ. P. 15(a)(2).

Instead, a motion to amend should only be denied as "futile" if the proposed amendment is frivolous on its face. *Ibrahim v. Stericycle, Inc.*, No. 16 C 4294, 2017 WL 11562210, at *1 (N.D. Ill. June 27, 2017) (finding "the proper standard" for a case at a similar posture "is whether the amended complaint is clearly insufficient or frivolous on its face"). The basis of Plaintiff's proposed fraud claim is that Defendants allegedly engage in collection activities by representing to the Court and consumers that they were assigned the debt by referring to a list that has since been destroy; however, Defendants were never assigned the debt and their conduct has been to conceal such a fact, according to Plaintiff's proposed amended complaint. (*See* Dkt. 56-1 at 6-7, 8, 16-17).

At this time, it is enough for the Court to acknowledge that, at common law, knowingly representing a property interest can constitute fraud when the representing party knows it has no such property interest. *See* 1 J. Story, *Commentaries on Equity Jurisprudence* § 208, at 236 (1836) ("[I]f a vendor should sell an estate, knowing that he had no title to it, or knowing that there were

11

incumbrances on it, of which the vendee was ignorant; the suppression of such a material fact, in respect to which the vendor must know, that the very purchase implied a trust and confidence on the part of the vendee, that no such defect existed, would clearly avoid the sale on the ground of fraud."). As Plaintiff's proposed amended complaint alleges that Defendants engaged in such conduct, Plaintiff's proposed-Count IV is not frivolous on its face. Thus, the amendment is not futile, and the Court finds that "justice so requires" Plaintiff's motion for leave to file an amended complaint be granted. Fed. R. Civ. P. 15(a)(2).

A dispute over the legal sufficiency of what the proposed amendments offer is best achieved by the appropriate motion seeking such relief.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's motion to amend the complaint, Dkt. [56]. The granting of this motion should not be read as indicating any view as to the ultimate merits of the claims. Plaintiff shall file the proposed Amended Complaint (Dkt. 56-1) **within seven (7) days** of this Order.

So ORDERED.

Date: 6/28/2023

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email