**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| DAWN BEUTEL-ZACHERY, | ) | |
| on behalf of plaintiff and the class | ) | |
| members described herein, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22−cv−02261−JRS−MKK |
| | ) | |
| | ) | |
| JAVITCH BLOCK LLC; | ) | |
| PALISADES COLLECTION, L.L.C.; and | ) | |
| PALISADES ACQUISITION XVI, LLC; | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S COMBINED UNOPPOSED**
**MOTION AND MEMORANDUM IN SUPPORT OF**
**PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

*/s/ Heather Kolbus*
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1800
Chicago, IL   60603
(312) 739-4200

Keith R. Hagan
Steven R. Hofer
HOFER HAGAN LLP
8888 Keystone Crossing, Suite 1300
Indianapolis, IN  46240
(317) 531-4575

Plaintiff Dawn Beutel-Zachery ("Plaintiff"), individually and as representative of the class, respectfully submits this motion for preliminary approval of the class settlement with Defendant Javitch Block LLC pursuant to the Court's order dated September 30, 2024. (*Dkt. No. 143*)

The parties have reached an agreement to resolve this case whereby Defendant Javitch Block LLC ("Javitch" or "Defendant") will create a class settlement fund of $40,000.00, which equates to approximately 94% of the *maximum* amount that a class could recover if *Javitch* were found liable at trial. *See* 15 U.S.C. § 1682k(A)(2)(B) (statutory damages available to a class under the FDCPA are limited to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector").

Separate and apart from the settlement fund dedicated to the class, Javitch has also agreed to pay Plaintiff's statutory damages, Class Counsel's attorneys' fees and expenses, and the costs of administering the settlement and providing direct mail notice to each class member.  The class notice will also be posted on Class Counsel's firm's website, www.edcombs.com.

Finally, as a result of Plaintiff's litigation, and as to the debts collected in the name of the Great Seneca Companies, Javitch will cease collection on the Great Seneca Company judgments that are pending in any stage, whether pre-collection, collection or post-judgment, thereby eliminating the risk of future harm to the class.  Considering the statutorily-limited damages available to the settlement class under the FDCPA, the settlement represents an excellent result for consumers.

For the reasons set forth below, this Court should enter an order which (i) preliminarily certifies a class for settlement purposes; (ii) preliminarily approves the Class Settlement Agreement ("Agreement") attached as Appendix A; (iii) sets deadlines for Class Members to submit requests to opt-out, and object, (iv) appoints Dawn Beutel-Zachery as Class Representative

and Edelman, Combs, Latturner & Goodwin, LLC and Hofer Hagan LLP as Class Counsel; (v) schedules a hearing for final approval of the Agreement; (vi) approves the mailing of notice to the Class in the form of <u>Exhibit C</u> to <u>Appendix A</u>; and (vii) finds that the mailing of such notice satisfies due process and Fed. R. Civ. P. 23. A copy of the proposed preliminary approval order is attached as <u>Exhibit A</u> to <u>Appendix A.</u>

## <u>SUMMARY OF THE CLAIMS</u>

Plaintiff, individually and on behalf of the Class, filed the above-captioned action against Defendants Javitch, Palisades Acquisition XVI, LLC and Palisades Collection, LLC in the Superior Court in Marion County, Indiana, cause number 49D07-2210-PL-036414, which was later timely removed to the United States District Court for the Southern District of Indiana, and assigned case number 1:22-cv-2261-JPS-MKK. Plaintiff asserted putative class claims against Javitch arising under the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 *et seq.,* and Wrongful Legal Proceedings. The complaint was later amended on June 28, 2023, to include a common law claim for fraud. (*Dkt. No. 70*) Specifically, Plaintiff alleges that Javitch engaged in conduct regarding its debt collection efforts with respect to Plaintiff and certain Indiana consumers including: (a) attempting to collect on judgments in the name the Great Seneca Companies long after they were dissolved; (b) falsely representing that the Great Seneca Company existed and was the party entitled to collect from the consumer; (c) filing with courts and presenting consumers with documents captioned "assignment" or "assignment of judgment" which were affidavits by an employee of Palisades Acquisition XVI, LLC, claiming an assignment was made; (d) filing with the court and presenting consumers with documents entitled "bill of sale" or "assignment" that did not refer to the CD (record that showed what the Great Seneca Companies assigned to Palisades Acquisition XV, LLC) or attach any material from the CD or that referenced

a schedule or exhibit that was never provided; (e) claimed that the Great Seneca Company changed its name to Palisades Acquisition XVI, LLC; and (f) changed the case caption on documents filed with the court and provided to consumers to refer to Palisades Acquisition XVI, LLC. Javitch denies Plaintiff's allegations but has agreed to the settlement to avoid the uncertainties of litigation.

## SUMMARY OF THE SETTLEMENT TERMS[1]

The details of the Settlement are contained in the Settlement Agreement and Release signed by Plaintiff and Javitch, a copy of which is attached as Appendix A ("Agreement"). For purposes of preliminary approval, the following summarizes the material terms of the Agreement:

**Settlement Class Definition:** The Agreement defines a settlement class under Rule 23(b)(3) comprised of:

(a) all natural persons (b) against whom one of the Great Seneca Companies obtained a judgment on a debt; (c) who were subjected to Collection Activities on such judgment, (d) by Javitch Block LLC acting on behalf of Palisades Acquisition XVI, LLC or Palisades Collection, LLC; (e) on or after October 20, 2021.

Based on the records produced by Defendant, there are approximately 237 individuals in the class. The "Great Seneca Companies" include: (i) Centurion Capital Corp., (ii) Colonial Credit Corp., (iii) Great Seneca Financial Corp., (iv) Hawker Financial Corp., (v) Monarch Capital Corp., (vi) Platinum Financial Services Corp., (vii) Sage Financial, Ltd. (hereinafter, the "Great Seneca Companies".

Collection Activities mean (i) written validation notice (required by 15 U.S.C. § 1692g) mailed to the consumer, or (ii) the consumer was called by Javitch regarding the debt; or (iii) the filing and service of an appearance of counsel, interrogatories, motion for proceedings supplemental, a garnishment, or motion to substitute.

---

[1] Any undefined capitalized terms shall have the meaning attributed to them in the parties' Settlement Agreement, which is being submitted contemporaneously herewith.

3

**Class Recovery:** (a) <u>Cash Payment</u>. The Agreement provides that Defendant will create a class settlement fund of $40,000.00 ("Settlement Fund") to be distributed equally and entirely among the Class Members who not timely exclude themselves from this settlement and whose mailed class notice is not returned as undeliverable. No portion of the Settlement Fund shall revert back to Defendant. (<u>Appendix A</u>, ¶ I.1.). If all 237 Class Notices are successfully sent, and there are no opt outs, Class Members may recover approximately $168.00. If however, between 5% to 10% of the Class Notices are returned as undeliverable (excluding any opt outs), Plaintiff's counsel anticipates that each class member will receive between approximately $177 to $187.

(b) <u>Equitable Relief</u>. In addition to cash payments, Defendant agrees to cease collecting the Great Seneca Company judgments that are pending in any stage, against any Class Member.

**Plaintiff's Recovery.** Subject to the Court's approval, Defendant has agreed to pay Plaintiff $900.00 for her statutory damages and for serving as a class representative. This amount is reasonably close to the statutory damages recoverable in an individual action under the FDCPA, 15 U.S.C. 1692k(a)(2)(A) ($1,000.00). The amount of the payment to Plaintiff recognizes her contribution to the successful outcome of the case and role as class representative. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Any service award approved by this Court will be paid separate and apart from the Settlement Fund/Class Recovery and will not reduce the class recovery, or the amount distributed to the Settlement Class.

**Attorneys' Fees and Costs.** Counsel for Plaintiff and the Class shall petition the Court for approval of attorneys' fees and costs in the amount of $40,000.00. Defendant shall pay those fees that the Court deems reasonable up to $40,000.00. Any attorney fees and costs approved by

the Court will be paid by Defendant separate and distinct from the Settlement Fund/Class Recovery and will in no way reduce the amount Defendant agreed to pay to the Settlement Class.[2]

**Cost of Class Notice and Administration.**  Defendant further agreed to pay all costs of notice and administration of the settlement. These costs are also being paid by Defendant separate from the Settlement Fund/ Class Recovery. (Appendix A, ¶F)

## ARGUMENT

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be

---

[2] Within 10 days of filing this motion, Plaintiff's counsel will file a Preliminary Notice of Attorney's Fees which details the fees and costs incurred by counsel to date.  To date, Class Counsel has incurred more than $40,000.00 in attorney's fees and costs and this amount does not include the time Plaintiff's Counsel will spend preparing for, and appearing at, future hearings related to the Settlement or class member inquiries concerning the Settlement.

approved if the settlement is "fair, reasonable, and adequate." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) citing *In re AT & T Mobility*, 270 F.R.D. at 346 (quoting *Armstrong*, 616 F.3d at 314). "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id.* "If the court preliminarily approves the settlement, the class members are notified." *Id.*

Rule 23 – and particularly the portions thereof dealing with settlement – was amended in December 2018. The first step in the amended process requires that counsel submit the proposed terms of settlement to the district court, along with "information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A) (2018). This is so the Court may make "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" Fed. Judicial Ctr., Manual for Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 11.25 (4th ed. 2002).

The new Fed. R. Civ. P. 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account: (i) the costs,

risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*; Fed. R. Civ. P. 23(e)(1)(B) (2018).

The second step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2) (2018); see also Fed. Judicial Ctr Manual for Complex Litigation, § 21.633-34; *In re Northfield Labs*, 2012 WL 366852, at *5. As explained below, consideration of these factors supports preliminary approving the Settlement and issuing notice.

## II. PLAINTIFF AND HER COUNSEL HAVE ADEQUATELY REPRESENTED THE CLASS AND THERE HAS BEEN NO FRAUD OR COLLUSION

By their very nature, class actions readily lend themselves to compromise because of the many uncertainties of outcome, difficulties of proof, and their often, lengthy duration. Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-deserved reputation as being most complex. *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig*., No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 313 ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). This matter is no exception. Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation.

In researching and preparing the initial complaint, Plaintiff's Counsel conducted a thorough analysis of Defendant's collection practices. At the outset of the litigation, Plaintiff's counsel had a basic understanding of the methods and scope of Defendant's debt collection practices. *See Dkt. No. 1.*

Defendants subsequently removed the case from Marion County to federal court and thereafter answered the complaint. The parties exchanged written discovery requests and responses and engaged in Fed. R. Civ. P. 37 discussions. Written discovery included exploring Defendant's practices related to Collection Activities. In addition, Plaintiff also conducted discovery concerning the assignments for judgments entered in favor of the Great Seneca Companies. Following a contested motion for leave to file an amended complaint, Plaintiff was granted leave to file an amended complaint, to add a common law claim of fraud. *See Dkt. No. 69.* Defendant answered the amended complaint and asserted affirmative defenses.

During the course of discovery, Defendant produced information on the size of the class as well as net worth information and information on its affirmative defenses. Plaintiff sought and obtained detailed financial information from Defendant, including various financial statements, balance statements and insurance coverage documents. After reviewing this information, Plaintiff's counsel was satisfied that, based on the Defendant's resources and the size of the class, further protracted litigation might risk a recovery for the class and thus, it was in the best interest of the class to explore a resolution of this matter. *E.E.O.C. v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir.1985). The Court set a settlement conference and the parties focused their efforts to reach a sensible resolution to this matter at this juncture so as to not further diminish any recovery available to the class by unnecessarily protracting the litigation.

At the time of the negotiations, the parties completed a sufficient amount of discovery to be able to place value on their respective positions in this case. *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015) (granting preliminary approval to class settlement where the parties exchanged discovery over a six-month period). Plaintiff and her counsel strongly believe that the proposed Settlement Agreement is fair and reasonable to the Class Members and should be granted preliminary approval.

Courts usually refuse to substitute their business judgment for that of counsel, absent fraud or overreaching. *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976) ("In reviewing a proposed settlement, the court should consider the judgment of counsel and the presence of good faith bargaining."), *overruled on other grounds* by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). *Id.* The adequacy of Plaintiff's representation is also satisfied because Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15-*16 (N.D. Ill. Aug. 20, 2009). Because Plaintiff's claims are aligned with the claims of the other class members, Plaintiff has every incentive to vigorously pursue the claims of the class. Plaintiff has remained actively involved in this matter since its inception, contributing her time and attention to the pre-suit litigation research, responding to written discovery, and staying involved in the settlement process. Further, Plaintiff is represented by qualified and competent counsel with extensive experience in litigating consumer class actions, and FDCPA actions in particular. *See,* Appendix B, Declaration of Daniel A. Edelman; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012)(quoting *Wal–Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d Cir.2005)).

### III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23

The question presented on a motion for preliminary approval of a class action settlement is whether the proposed settlement is "within the range of possible approval." *Armstrong*, 616 F.2d 305, 314 (7th Cir. 1980); *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009); *Manual for Complex Litigation*, (4th ed.), §21.62 and §21.63.

To grant preliminary approval, a court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d at 634 (quoting *Manual For Complex Litigation* (3d ed.) § 1.46 n.10) (internal quotation marks omitted); *Newberg*, §11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (citations omitted).

In making this determination, courts consider several factors, and this Court requested Plaintiff to discuss these five factors:  "(1) the strength of the plaintiffs' case on the merits compared to the amount of the defendants' settlement offer, (2) an assessment of the likely complexity, length and expense of litigation, (3) an evaluation of the amount of opposition to the settlement among affected parties, (4) the opinion of competent counsel, and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement."  (*Dkt. No. 35*), *citing Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 6467, 653 (7th Cir. 2006).

### A.    The Settlement provides adequate relief to the settlement class given the risks posed by continued litigation

In evaluating a proposed settlement, the court recognizes that the "essence of settlement is compromise" and will not represent a total win for either side. *Isby v. Bayh*, 75 F.3d 1191, 1200

(7th Cir.1996), quoting *Armstrong,* 616 F.2d 305, 315 (7th Cir.1980). Accordingly, the court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial. *In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F.Supp.3d 1076, 1087 (N.D. Ill. 2021), quoting *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 285 (7th Cir. 2017); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 534 (D.N.J.1997), *aff'd*, 148 F.3d 283 (3d Cir.1998); *E.E.O.C. v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir.1985)."  As courts in this Circuit have noted, "[a] settlement need not provide the class with the maximum possible damages to be reasonable." *Douglas v. W. Union Co.*, No. 14 C 1741, 2018 WL 4181484, at *6 (N.D. Ill. August 31, 2018).

Because the traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of resources, and, given the small value of the claims of the individual class members, would be wholly impracticable, the proposed settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

In a class action filed under the FDCPA, the maximum possible recovery is (i) any actual damages sustained as a result of the alleged violation by the class members and (ii) the lesser of 1% of the Defendant's net worth or $500,000.00. 15 U.S.C. §1692k.   However, the Court, in its discretion, may award less than the maximum recovery.

Here, one percent of Defendant's net worth is $42,422.  Defendant will pay $40,000.00 to the Settlement Fund which represents approximately 94% of the ***maximum*** recovery that a Court could award at a trial on the damages.  This is assuming, however, first, that class certification is granted, and second, that Plaintiff is successful in proving liability against Defendant.  Not to

mention the considerable time and expense which may result from any procedural and substantive appeals at the various stages of litigation. Moreover, even successful litigation could ultimately result in minimal or no additional monetary relief for the Class, assuming Defendant's net worth does not change or changes modestly. Alternatively, if Defendant's net worth decreases during the pendency of the litigation, this may decrease the amount of statutory recovery available to the Class.

The Class Recovery also compares favorably to the recovery available in an individual action under 15 U.S.C. §1692k where a Court could award anything between $0.00 and $1,000.00 in statutory damages, actual damages, plus attorney's fees and costs of suit. Under the wrongful legal proceedings claim, a Court may award actual damages, punitive damages and costs of suit. Finally, under the fraud claim, a Court may award compensatory damages, punitive damages, and costs of suit. In addition to the cash recovery component of the Class Recovery, Class Members who do not opt out and who are successfully sent the notice will receive equitable relief. Defendant agrees to cease collecting the Great Seneca Company judgments against any Class Member.

Since there are no claims forms to submit, the amount of the cash payment portion of the Class Recovery depends on the number of opt outs, which Plaintiff's counsel estimates to be 0 to 1%, and the number of Class Notices returned as undeliverable. Since all addresses will be checked through the National Change of Address database prior to mailing, Plaintiff estimates a high rate of success on the number of Class Notices mailed. Based on a conservative estimate of between 5% to 10% undeliverable mail, Plaintiff's counsel anticipates that each class member may receive approximately $177 (at 5% undeliverable) to $187 (at 10% undeliverable). A recovery within the range achieved here compares favorably with other FDCPA settlements in this Circuit and beyond. *Hussain v. LSF9 Master Participation Trust*, 17-cv-625 (S.D. Ind.) (*Dkt. No. 84*)

(class members recovered approximately $20); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 290 (6th Cir. 2016) (crediting testimony that response rates in consumer class actions generally range from one to twelve percent); *See Pierre v. Midland Credit Management, Inc*., 16-cv-2895 (N.D. Ill.) (*Dkt. No. 220*) (following jury trial, class members recovered $5.00 in statutory damages).   The class notice will also be posted on www.edcombs.com.

To assert an individual claim, a class member would first have to recognize that his or her rights were violated, and then retain a lawyer, participate in discovery and possibly a deposition and wait through litigation.  In contrast here, class members need to take no action to receive their *pro rata* share of the Class Recovery.

Here, litigation—including class litigation—is oftentimes expensive, time-consuming, complex and risky and would not result in a greater benefit to any class.  Defendant denies liability, and therefore, Plaintiff would have to overcome challenges to obtain a favorable outcome. Plaintiff would need to succeed on a motion for class certification and at trial.  Without the Settlement Agreement, the Class Members could wait years for any potential payment on their alleged claims, the future value of which is unknown and could risk further diminishment of Defendant's net worth, or even worse, that Defendant becomes completely defunct and uncollectible.

Moreover, it would be imprudent at this stage of the litigation to presume ultimate success on liability and thereafter.  *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 739 (N.D. Ill. 2014) ("[T]he reality known to first year law students [is] that juries are inherently unpredictable, and there is no such thing as a sure winner either in pretrial proceedings or at trial.") (internal citation omitted)   "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *In re Nationwide Financial Services*

*Litigation*, No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962, at *6 (S.D. Ohio, 2009), quoting, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), aff'd, 440 F. 2d 1079, 1085-86 (2d Cir.), cert. denied, 404 U.S. 871, 92 S. Ct. 81, 30 L. Ed. 2d 115 (1971); *In re General Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant were facts favoring settlement, which offers immediate benefits and avoids delay and expense). The proposed settlement is warranted by the length and expense of continued litigation.

The years of additional litigation would unnecessarily increase both the expense of the litigation and the risk for Class Members. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 101. Plaintiff and the Class Members should not be exposed to the risk of no recovery either because of changes in the law which may impact, in whole or part, a finding of whether Defendant violated the FDCPA, engaged in wrongful legal proceedings or committed fraud or Plaintiff and the class's claims are actionable under the FDCPA or the Defendant's financial circumstances, or at all. As a result, this factor strongly weighs in favor of preliminary approval.

By reaching a favorable settlement at this state in the litigation, before Defendant expended more substantial resources on the defense of litigation, Plaintiff and the Class avoid significant expense and delay, and instead ensure a significant and early recovery for the Settlement Class Members. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985); *Isby v. Bayh, supra*, 75 F.3d at 1199; *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000).

Continued litigation also carries with it a decrease in the time value of money; "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The Settlement Agreement, on the other hand, provides substantial immediate benefits.

Rather than embarking on years of protracted and uncertain litigation, Plaintiff and her counsel negotiated a Settlement that provides immediate, certain, and meaningful relief to all the class. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("In short, the settlement provides immediate value to the Class Members that is well within the range of—and may in fact significantly exceed—their expected recovery from proceeding to trial.") In sum, the arguable strength of the Settlement Class Member's claims compares favorably to the terms of the Settlement.

### B. Continued Litigation Would be Complex, Costly and Lengthy

Class settlement approval is also favored where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 586. With this in mind, while Plaintiff's counsel strongly believes in the strength of the claims asserted, if this litigation were to continue, it would be lengthy, expensive and involve extensive motion practice, including a motion for class certification (and possibly a motion for decertification), motions for summary judgment and various pretrial motions, as well as the retention of experts, preparation of expert reports, and expert depositions.

Additionally, even if the Settlement Class recovered a judgment at trial in excess of what is provided by the Settlement, post-trial motions and any appellate process would deprive them of

any recovery for years, and possibly forever in the event of a reversal. Instead, the settlement provides to every class member who is successfully sent the class notice and does not opt out, very nearly full, monetary recovery now, not years from now, as well as equitable relief and certainty, with no effort on the part of the class members.

### C.    The Reaction of the Settlement Class Members Will be Evaluated at Final Approval

An analysis of the class members' reaction to the settlement is premature at this juncture. *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 349 (N.D. Ill. 2010). The Court should analyze this factor after the Class Notice is sent and the class members have had an opportunity to opt out of the Settlement Agreement. There are no other competing FDCPA class action cases pending against Defendant.

### D.    Class Counsel Strongly Endorses the Settlement

The opinion of Class Counsel is also relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte,* 805 F.Supp.2d at 586-87; *Isby* at 1200. Many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *Armstrong*, 616 F.2d at 325; *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp*., 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2nd Cir. 1982); *In re Mexico Money Transfer Litigation, supra*, 164 F. Supp. 2d at 1020. In fact, courts are "entitled to rely heavily on the opinion of competent counsel," *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Board of School Directors, supra*, 616 F.2d at 325); *Isby v. Bayh, supra*, 75 F.3d at 1200.

In this case, Plaintiff's counsel are experienced in consumer class action litigation. (Appendices B-C). Based upon their analysis, the relief being offered to Settlement Class Members represents a significant recovery for the Settlement Class, particularly when weighed

against Defendant's anticipated defenses and the inherent risks of continued litigation. Class Counsel strongly endorses this settlement and believes it is a great result for the class.

### E.    Further Litigation is Unlikely to Result in Better Recovery to the Class

The last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) (quoting *Armstrong*, 616 F.2d at 325) (internal quotations omitted).  No further investigation, discovery and/or analysis would change Class Counsels' evaluation of this case or their opinion about this settlement.  The parties engaged in multiple rounds of written discovery, and were well aware of the strengths and weaknesses of the merits and defenses at the time the parties reached an agreement.  The resolution of this matter avoids further expense and delay and ensures a recovery for the class members.

Every class action—indeed, every case—involves some level of uncertainty on the merits. *See In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."). Settlements resolve that inherent uncertainty, and are therefore strongly favored by the courts, particularly in class actions.  This action is not unique in this regard, and, absent settlement, the parties would be forced to continue to litigate complex issues, including the propriety of class certification and the class is unlikely to receive a recovery more favorable than that provided by the Agreement. *See Midland Funding, LLC v. Brent*, No. 3:08 CV 1434, 2011 WL 3557020, at *16 (N.D. Ohio Aug. 12, 2011) ("The Fair Debt Collection Practices Act is a set of complex laws with many components. The instant case would be very

expensive to fully litigate, and might take years to finally resolve through the course of trial and appeal, creating additional attorney's fees and reducing any potential payout to the class.")

Courts encourage parties to settle class actions early, without expending unnecessary resources. *McCue v. MB Fin., Inc.*, 15 CV 988, 2015 WL 4522564, at *4 (N.D. Ill. July 23, 2015), quoting *Yuzary v. HSBC Bank USA, N.A*., No. 12-cv-3693, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013) ("early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere").

Here, the parties engaged in written discovery in this matter. Such discovery included document production that identified the number of class members, as well as documentation to support Defendant's defenses and provision of Defendant's insurance policies and financial documents. Plaintiff's counsel examined the insurance policies and financial documents, as well as discovery supporting and challenging Plaintiff's anticipated motion for class certification. The parties further discovery responses and documents that identified certain risk factors affecting Defendant's finances, as well as the merits of Defendant's affirmative defenses.

Because class members will receive 94% of the maximum in statutory damages of what they could receive had Plaintiff prevailed on liability and damages on the FDCPA claim, plus equitable relief, and because the settlement avoids the risk, time, and expense of continued litigation, the settlement is fair, reasonable, and adequate. As a result, the Court should approve the settlement. See *Shulte*, 805 F. Supp. 2d at 585-86 (N.D. Ill. 2011).

## IV.    THE METHOD OF PROVIDING RELIEF IS EFFECTIVE AND TREATS ALL MEMBERS OF THE CLASS FAIRLY

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments

to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." This settlement proposes the gold-standard in class member relief: cash payments. Equitable relief is also offered.  Cash Awards will be distributed equally on a *pro rata* basis to all Settlement Class Members who do not opt out and who are successfully sent the Class Notice. (Appendix A, ¶I.2). Accordingly, all Class Members who do not opt out and whose Class Notice is not returned as undeliverable will receive the same cash award at the same time. Class Members will also receive equitable relief wherein Defendant agrees to cease collecting the Great Seneca Company judgments that are pending in any state, against any Class Member.  For these reasons, the settlement relief is both effective and treats all members of the Settlement Class fairly.

Class Members do not need to take any action to remain in the class, and the settlement does not include any claim form process.  Rather, the claim procedure proposed is consistent with the spirit of Rule 23(e)(2).

The Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); see also MCL 4th § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the proposed form of notice does just that.  (Exhibit C to Appendix A)  The proposed notice is clear, and straightforward, and provides Settlement Class Members with enough information to evaluate whether to participate in the settlement. *Phillips Petroleum Co. v. Shutts*,

19

472 U.S. 797, 808 (1985)) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

Moreover, a settlement similar to what is proposed here, that requires defendant to disgorge a predetermined sum "is more likely to be found fair, reasonable, and adequate." *T.K. v. Bytedance Technology Co., Ltd.*, No. 19-CV-7915, 2022 U.S. Dist. LEXIS 65322, at *39 (N.D. Ill. Mar. 25, 2022)

The proposed Settlement provides for the Class Recovery to be paid in full, and divided equally among each Settlement Class Member that do not opt out and whose notice is not returned as undeliverable. Such distribution plans indicate equitable treatment of class members relative to each other. *T.K.*, 2022 U.S. Dist. LEXIS 65322, at *42. Generally, a settlement that provides for *pro rata* shares to each class member will meet this standard. *E.g., Burnett v. Conseco Life Ins. Co.,* No. 18-CV-0200, 2021 U.S. Dist. LEXIS 6510, 2021 WL 119205, at *9 (S.D. Ind. Jan. 13, 2021).

Defendant's total monetary payment to the Class Recovery will remain the same regardless of the number of opt outs and number of persons whose mailed class notice is not returned as undeliverable. None of the Class Recovery will revert back to the Defendant – the fund is divided equally among all Participating Class Members (persons who do not opt out and whose mailed class notice is not returned as undeliverable) and if there are any uncashed settlement checks after distribution, those funds are awarded to a *cy pres* recipient, Indiana Legal Services. (Appendix A, ¶I.3). *Schulte*, 805 F. Supp. 2d at 591; *See also, Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 499 [*747] (N.D. Ill. 2015) ("A cumbersome claims process is particularly suspect in the case of a reversionary settlement, that is, a settlement under which the defendant recaptures unclaimed funds"), citing *Schulte* and *Pearson v. NBTY, Inc.*, 772 F.3d 778, 783 (7th Cir. 2014) (observing

that the imposition of an unduly burdensome claims process typically benefit defendants who stand to recover leftover funds). Indeed, the Seventh Circuit instructs that "[m]oney not claimed by class members should be used for the class's benefit to the extent that is feasible…" *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013).

## V.    THE PROPOSED SETTLEMENT CLASS MEETS ALL THE REQUIREMENTS OF RULE 23 FOR CERTIFICATION

Under Federal Rule of Civil Procedure 23(a) the prerequisites to class certification are:

(1)  The class is so numerous that joinder of all members is impracticable,
(2)  There are questions of fact or law common to the class,
(3)  The claims or defenses of the representative parties are typical of the claims defenses of the class, and
(4) The representative parties will fairly and adequately protect the interest of the class.

Further, Federal Rule of Civil Procedure 23(b)(3) provides that a class action is maintainable if the above prerequisites have been met and: "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* Plaintiff contends (and Defendant does not dispute for purposes of settlement) that as demonstrated below, each of the requirements for certification of the Settlement Class is met.

### A.    Rule 23(a)(1) – Numerosity.

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is usually 40. *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143

F.R.D. 181, 184 (N.D. Ill. 1992) (72 class members).  In the present case, Defendant represented that, based on a review of its records, there are approximately 237 persons in the Settlement Class. This plainly satisfies the numerosity requirement.

> **B.**     **Rule 23(a)(2) – Commonality; and Rule 23(b)(3) – Common Questions of Law or Fact Predominate.**

Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law <u>or</u> fact.  Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation.  *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975).  Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims.  *McClendon v. Continental Group, Inc.*, 113 F.R.D. 39, 43-44 (D.N.J. 1986); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 114 F.R.D. 48, 52 (S.D.N.Y. 1987); *Spicer v. Chicago Board Options Exchange*, CCH Fed.Sec.L.Rptr. [1989-90 Transfer Binder] ¶94,943, at p. 95,254 (N.D. Ill. 1990); *Alexander Grant & Co. v. McAlister*, 116 F.R.D. 583, 590 (S.D. Ohio 1987).  Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988).  Here, there are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

> (1) Whether Defendant engaged in a pattern of collecting judgments entered in favor of the Great Seneca Companies without account level assignments;
> (2) Whether such practice violates the FDCPA;

(3) Whether engaging in such conduct is a wrongful use of legal proceedings; and
(4) Whether engaging in such conduct constitutes fraud.

C.      **Rule 23(a)(3) – Typicality**.

Rule 23 requires that the claims of the named Plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.  The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members.  Thus, similarity of legal theory may control even in the face of differences of fact.

*De La Fuente v. Stokely Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).  In the instant case, typicality is inherent in the class definition. By definition, each of the Class Members has been subjected to the same practice as the named Plaintiff, namely they are persons against whom one of the Great Seneca Companies obtained a judgment on a debt, who were subjected to Collection Activities on such judgment, by Defendant acting on behalf of Palisades Acquisition XVI, LLC or Palisades Collections, LLC on or after October 20, 2021.

D.      **Rule 23(a)(4) – Adequacy of Representation**.

The adequacy of representation requirement involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Plaintiff will fairly and adequately protect the interests of the class. Plaintiff retained counsel experienced in handling class actions and claims involving alleged unlawful business practices.  Counsel's qualifications are set forth in Appendix B (Edelman Combs, Latturner & Goodwin, LLC) and Appendix C (Hofer Hagan LLP).  Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

E.    **Rule 23(b)(3) – Class Action Is Superior to Other Available Methods of Resolving This Controversy**.

A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims is small because generally the class members are unaware of their rights and have damages such that it is not feasible for them to bring individual actions.  "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." *Brady v. LAC, Inc*., 72 F.R.D. 22, 28 (S.D.N.Y. 1976).

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit.  This is particularly important where, as here, a large number of small and medium sized claimants may be involved.  In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court has noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

*Lake v. First Nationwide Bank*, 156 F.R.D. 615, 625 (E.D. Pa. 1994).

WHEREFORE, Plaintiff respectfully requests that the Court enter an order in the form of Exhibit A to the Agreement, which (i) preliminarily approves the Agreement; (ii) preliminarily certifies the class mentioned above for settlement purposes only; (iii) appoints Dawn Beutel-Zachery as Class Representative and Edelman, Combs, Latturner & Goodwin, LLC and Hofer Hagan, LLP as class counsel; (iv) schedules a hearing for final approval of the Agreement; (v) approves Exhibit C to the Agreement as notice to the Class to be directed by First Class U.S. Mail to the last known address of the Class Members as shown from Defendant's records; (vi) sets dates for Class Members to submit opt outs and object, and (vii) finds that the mailing of notice satisfies due process and Fed. R. Civ. P. 23.

Respectfully submitted,

*/s/ Heather Kolbus*
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1800
Chicago, IL  60603
(312) 739-4200

Keith R. Hagan
Steven R. Hofer
HOFER HAGAN LLP
8888 Keystone Crossing, Suite 1300
Indianapolis, IN  46240
(317) 531-4575

## <u>CERTIFICATE OF SERVICE</u>

I, Heather Kolbus, certify that on November 13, 2024, I caused a true and accurate copy of the foregoing document to be filed via the Court's CM/ECF system which caused notice to be sent via email to all counsel of record.

<u>/s/ Heather Kolbus</u>
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1800
Chicago, IL   60603
(312) 739-4200