**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| DAWN BEUTEL-ZACHERY, | ) | |
| on behalf of plaintiff and the class | ) | |
| members described herein, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22−cv−02261−JRS−MKK |
| | ) | |
| | ) | |
| JAVITCH BLOCK LLC; | ) | |
| PALISADES COLLECTION, L.L.C.; and | ) | |
| PALISADES ACQUISITION XVI, LLC; | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S UNOPPOSED COMBINED MOTION AND MEMORANDUM
IN SUPPORT OF PRELIMINARY APPROVAL OF
CLASS SETTLEMENT WITH THE PALISADES DEFENDANTS**

/s/ Heather Kolbus
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1800
Chicago, IL   60603
(312) 739-4200

Keith R. Hagan
Steven R. Hofer
HOFER HAGAN LLP
8888 Keystone Crossing, Suite 1300
Indianapolis, IN  46240
(317) 531-4575

Plaintiff Dawn Beutel-Zachery ("Plaintiff"), individually and as representative of the class, respectfully submits this motion for preliminary approval of the class settlement with Defendants Palisades Acquisition XVI, LLC and Palisades Collection, LLC pursuant to the Court's order dated September 16, 2024. (*Dkt. No. 141*)

The parties have reached an agreement to resolve this case whereby Defendants Palisades Acquisition XVI, LLC and Palisades Collection, LLC (collectively, the "Palisades Defendants") will permanently cease all Collection Activities on any Great Seneca Company account on which any Class Member is an obligor. The Palisades Defendants will also not resell or transfer the Great Seneca Company accounts on which a Class Member is an obligor that are subject to the settlement agreement. The settlement represents an excellent result for consumers.

In addition to the equitable relief provided to the class, the Palisades Defendants have also agreed to pay Plaintiff's statutory damages, and Class Counsel's attorneys' fees and expenses.

For the reasons set forth below, this Court should enter an order which (i) preliminarily certifies a class for settlement purposes; (ii) preliminarily approves the Class Settlement Agreement ("Agreement") attached as Appendix A; (iii) sets deadlines for Class Members and state and federal officials to object, (iv) appoints Dawn Beutel-Zachery as Class Representative and Edelman, Combs, Latturner & Goodwin, LLC and Hofer Hagan LLP as Class Counsel; (v) schedules a hearing for final approval of the Agreement. A copy of the proposed preliminary approval order is attached as Exhibit 1 to Appendix A.

## SUMMARY OF THE CLAIMS

Plaintiff, individually and on behalf of the Class, filed the above-captioned action against Defendants Javitch, Palisades Acquisition XVI, LLC and Palisades Collection, LLC in the Superior Court in Marion County, Indiana, cause number 49D07-2210-PL-036414, which was

later timely removed to the United States District Court for the Southern District of Indiana, and assigned case number 1:22-cv-2261-JPS-MKK.  Plaintiff asserted putative class claims against the Palisades Defendants arising under the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 *et seq.,* the Indiana Deceptive Consumer Sales Act ("IDCSA"), IC 24-5-0.5-3, and Wrongful Legal Proceedings.  The complaint was later amended on June 28, 2023, to include a common law claim for fraud.   Specifically, Plaintiff alleged that the Palisades Defendants commenced legal proceedings to enforce judgments that were entered in lawsuits wherein the judgments had not been assigned to the entities in whose names the legal proceedings were brought.  Plaintiff alleged that the Defendants, acting in concert, violated § 1692f, by prosecuting legal proceedings on judgments without an appropriate assignment of the judgment and the debt to Palisades Acquisition XVI, LLC.  Plaintiff also alleged that the Palisades Defendants violated the IDCSA in that by trying to collect judgments in favor of a defunct entity, without an assignment of the debt and judgment, the Palisades Defendants engaged in a scheme, device or artifice with intent to defraud consumers and Plaintiff relied on the Palisades Defendants' deceptive acts by hiring an attorney and otherwise defending proceedings that should not have been brought. Plaintiff alleged a claim against all Defendants for wrongful legal proceedings in directing legal process to Plaintiff and her employer when Defendants were not authorized to take such action. Plaintiff also alleges a claim against all Defendants for fraud alleging that Defendants committed fraud on both the judgment debtors and the judicial system.  Plaintiff alleged that Defendants acted for the wrongful purpose of concealing defects in the assignments and collecting money to which they were not entitled.  The Palisades Defendants deny Plaintiff's allegations but have agreed to the settlement to avoid the uncertainties of litigation.

## <u>SUMMARY OF THE SETTLEMENT TERMS[1]</u>

The details of the Settlement are contained in the Settlement Agreement and Release signed by Plaintiff and the Palisades Defendants, a copy of which is attached as <u>Appendix A</u> ("Agreement"). For purposes of preliminary approval, the following summarizes the material terms of the Agreement:

**Settlement Class Definition:**   The Agreement defines a settlement class under Rule 23(b)(3) comprised of:

> (a) all natural persons (b) against whom one of the Great Seneca Companies obtained a judgment in Indiana State court and the judgment is docketed in Indiana State court only; (c) who were subjected, directly or indirectly, to Collection Activities on such judgment, by or on behalf of the Palisades Defendants; (d) on or after October 20, 2020.

Based on the records produced by the Palisades Defendants, there are in excess of 5,000 individuals in the class.[2]  The "Great Seneca Company/ Companies" include: (i) Centurion Capital Corporation, (ii)  Colonial Credit Corporation, (iii) Great Seneca Financial Corporation, (iv)  Hawker Financial Corporation, (v) Monarch Capital Corporation, (vi) Platinum Financial Services Corporation, (vii) Sage Financial, Ltd., and (viii) any and all other creditors on accounts allegedly owned or acquired by Palisades Acquisition XVI, LLC in Indiana.

Collection Activities means the following in any stage, whether pre-collection, or post-judgment, in court or in arbitration:  (i) written validation notice (required by 15 U.S.C. § 1692g) mailed to the consumer, or (ii) the consumer was called regarding the debt by or on behalf of the Palisades Defendants; or (iii) the filing and service of an appearance of counsel, interrogatories, motion for proceedings supplemental, a garnishment, or motion to substitute.

---

[1] Any undefined capitalized terms shall have the meaning attributed to them in the parties' Settlement Agreement, which is being submitted contemporaneously herewith.

[2]  The Palisades Defendants will provide the exact number at the next court hearing.

**Class Recovery:  Injunctive Relief**.  The Palisades Defendants agree to cease Collection Activities on any Great Seneca Company collection account on which a member of the Class is an obligor.

**Plaintiff's Recovery.**  Subject to the Court's approval, the Palisades Defendants have agreed to pay Plaintiff $7,000.00 for her actual and statutory damages and for serving as a class representative. IC 24-5-0.5-4 ($500 per Defendant if not willful); 15 U.S.C. §1692k(a)(2)(A) ($1,000). The amount of the payment to Plaintiff recognizes her contribution to the successful outcome of the case and role as class representative.  *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).  Any service award approved by this Court will be paid separate from and in addition to the Injunctive Relief/ Class Recovery.  Since the Class Members are receiving injunctive relief this award will not reduce any recovery to the Settlement Class.

**Attorneys' Fees and Costs.**  Counsel for Plaintiff and the Class shall petition the Court for approval of attorneys' fees and costs in the amount of $200,000.00.  The Palisades Defendants shall pay those fees that the Court deems reasonable up to $200,000.00.  Any attorney fees and costs approved by the Court will be paid by the Palisades Defendants separately and this award will in no way reduce the any recovery to the Settlement Class.[3]

**Cost of CAFA Notice.**  The Palisades Defendants agreed to pay all costs of notice of this settlement to the appropriate state and federal authorities in compliance with the Class Action Fairness Act ("CAFA").  These costs are also being paid by the Palisades Defendants separate from the Injunctive Relief/Class Recovery. (Appendix A, ¶21)

---

[3] Within 10 days of filing this motion, Plaintiff's counsel will file a Preliminary Notice of Attorney's Fees which details the fees and costs incurred by counsel to date.  To date, Class Counsel has incurred more than $200,000.00 in attorney's fees and costs and this amount does not include the time Plaintiff's Counsel will spend preparing for, and appearing at, future hearings related to the Settlement.

## **ARGUMENT**

### I.   **PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) citing *In re AT & T Mobility*, 270 F.R.D. at 346 (quoting *Armstrong*, 616 F.3d at 314). "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id.* "If the court preliminarily approves the settlement, the class members are notified." *Id.*

The new Fed. R. Civ. P. 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*; Fed. R. Civ. P. 23(e)(1)(B) (2018).

Here, the parties request that the Court determine pursuant to Fed. R. Civ. P. 23(c)(2)(A) that notice is not necessary as class members are not bound by any release. Notice is not required under Fed. R. Civ. P. 23(b)(2) and the Palisades Defendants will issue written CAFA notice.

The second step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2) (2018); see also Fed. Judicial Ctr Manual for Complex Litigation, § 21.633-34; *In re Northfield Labs*, 2012 WL 366852, at *5. As explained below, consideration of these factors supports preliminary approving the Settlement and a determination that no personal notice to the class is required.

## II.    PLAINTIFF AND HER COUNSEL HAVE ADEQUATELY REPRESENTED THE CLASS AND THERE HAS BEEN NO FRAUD OR COLLUSION

By their very nature, class actions readily lend themselves to compromise because of the many uncertainties of outcome, difficulties of proof, and their often, lengthy duration. Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-deserved reputation as being most complex. *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig*., No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 313 ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). This matter is no exception.  Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation.

In researching and preparing the initial complaint, Plaintiff's Counsel conducted a thorough analysis of Defendants' collection practices.  At the outset of the litigation, Plaintiff's counsel had a basic understanding of the methods and scope of Defendants' debt collection practices.  *See Dkt. No. 1*.

Plaintiff sought and was granted leave to file an amended complaint, alleging common law fraud against all Defendants. (*Dkt. No. 69*)  Plaintiff's amended complaint was filed on June 28, 2023 (*Dkt. No. 70*) and Defendants' answered and asserted affirmative defenses.  (*Dkt. No. 73, 111, 123*)  Plaintiff alleged that Defendants took specific actions to conceal the fact that they did not have valid assignments.  Plaintiff alleged Defendants produced and filed with the courts "bills of sale" and "assignments" that referred to accounts "attached hereto as Schedule 1" or "referenced on the attached Exhibit A" when no "Schedule 1" or "Exhibit A" existed.  Plaintiff alleged that

Defendants claimed that the documents referred to were on a CD which Defendants discarded. The Palisades Defendants denied Plaintiff's allegations.

The parties argued contested discovery motions.  After reviewing the discovery production and after several conferences with the Palisades Defendants' counsel, Plaintiff's counsel was satisfied that, further protracted litigation might risk a recovery for the class and thus, it was in the best interest of the class to explore a resolution of this matter. *E.E.O.C. v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir.1985).  The Court set a settlement conference and the parties focused their efforts to reach a sensible resolution to this matter at this juncture.

The parties attended a mediation session before Magistrate Judge Klump on August 8, 2024.  Following the settlement conference, the parties continued their settlement discussions. After extensive negotiations and following years of contested litigation, the parties entered an agreement which the parties submit confers substantial injunctive relief to all Class Members.  At the time of the mediation and settlement, the parties' respective theories of the cases were known and well-developed. Significant written discovery had been exchanged and voluminous documents had been produced.  At the time of the negotiations, the parties completed a sufficient amount of discovery to be able to place value on their respective positions in this case.  *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015) (granting preliminary approval to class settlement where the parties exchanged discovery over a six-month period).

During the course of the litigation, the Palisades Defendants referenced a prior case, wherein similar allegations were raised against them, which they denied. *Ciesniewski, et al. v Aries Capital Partners, Inc., et al.*, 16cv817-JPH-TAB (S.D. Ind.). Plaintiff's contended that the Palisades Defendants' alleged unlawful debt collection practices continued following *Ciesniewski,* which Plaintiff's submit made the Palisades Defendants' alleged practices herein more egregious,

and support why injunctive relief is appropriate. Plaintiff and her counsel strongly believe that the proposed Settlement Agreement is fair and reasonable to the Class Members and should be granted preliminary approval.

Courts usually refuse to substitute their business judgment for that of counsel, absent fraud or overreaching. *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976) ("In reviewing a proposed settlement, the court should consider the judgment of counsel and the presence of good faith bargaining."), *overruled on other grounds* by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). *Id.* The adequacy of Plaintiff's representation is also satisfied because Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15-*16 (N.D. Ill. Aug. 20, 2009). Because Plaintiff's claims are aligned with the claims of the other class members, Plaintiff has every incentive to vigorously pursue the claims of the class. Plaintiff has remained actively involved in this matter since its inception, contributing her time and attention to the pre-suit litigation research, responding to written discovery, attending the mediation before Magistrate Judge Klump and staying involved in the settlement process. Further, Plaintiff is represented by qualified and competent counsel with extensive experience in litigating consumer class actions, and FDCPA actions in particular. *See,* Appendix B, Declaration of Daniel A. Edelman; Appendix C, Declaration of Steven Hofer; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012)(quoting *Wal–Mart Stores, Inc. v. Visa USA, Inc*., 396 F.3d 96, 116 (2d Cir.2005)).

## III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23

The question presented on a motion for preliminary approval of a class action settlement is whether the proposed settlement is "within the range of possible approval." *Armstrong*, 616 F.2d

305, 314 (7th Cir. 1980); *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009); *Manual for Complex Litigation*, (4th ed.), §21.62 and §21.63.

To grant preliminary approval, a court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d at 634 (quoting *Manual For Complex Litigation* (3d ed.) § 1.46 n.10) (internal quotation marks omitted).

In making this determination, courts consider several factors, and this Court requested Plaintiff to discuss these five factors: "(1) the strength of the plaintiffs' case on the merits compared to the amount of the defendants' settlement offer, (2) an assessment of the likely complexity, length and expense of litigation, (3) an evaluation of the amount of opposition to the settlement among affected parties, (4) the opinion of competent counsel, and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement." (*Dkt. No. 35*), citing *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 6467, 653 (7th Cir. 2006).

### A.    Strength of Plaintiff's Case Compared to Terms of Settlement

In evaluating a proposed settlement, the court recognizes that the "essence of settlement is compromise" and will not represent a total win for either side. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir.1996), quoting *Armstrong,* 616 F.2d 305, 315 (7th Cir.1980). "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330, 347 (N.D. Ill. 2010).

Accordingly, the court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a

settlement as they might have recovered from victory at trial. *In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F.Supp.3d 1076, 1087 (N.D. Ill. 2021), quoting *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 285 (7th Cir. 2017); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 534 (D.N.J.1997), *aff'd*, 148 F.3d 283 (3d Cir.1998); *E.E.O.C. v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir.1985)."  As courts in this Circuit have noted, "[a] settlement need not provide the class with the maximum possible damages to be reasonable." *Douglas v. W. Union Co.*, No. 14 C 1741, 2018 WL 4181484, at *6 (N.D. Ill. August 31, 2018).

As set forth above, at the time of the settlement, the parties' theories of the case were well-developed and a significant amount of written discovery had been exchanged.

As alleged in the amended complaint, in numerous cases, Plaintiff's contend that Defendants' commenced or continued legal proceedings without an account level assignment of the debt or judgment from one of the Great Seneca Companies to Palisades Acquisition XV, LLC and from Palisades Acquisition XV, LLC to Palisades Acquisition XVI, LLC.  There were however, risks to continued litigation.  The Palisades Defendants raised affirmative defenses and argued that they successfully defeated similar allegations in previous courts and cases, including *Ciesniewski*.  These alleged unlawful collection activities will be enjoined as a result of this settlement.

Because the traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of resources, and, given the small value of the claims of the individual class members, would be wholly impracticable, the proposed settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

This is assuming, however, first, that class certification is granted, and second, that Plaintiff is successful in proving liability against the Palisades Defendants.  Not to mention the considerable time and expense which may result from any procedural and substantive appeals at the various stages of litigation.

To assert an individual claim, a class member would first have to recognize that his or her rights were violated, and then retain a lawyer, participate in discovery and possibly a deposition and wait through litigation.  In contrast here, class members need to take no action to receive the Injunctive Relief/ Class Recovery.

Here, litigation—including class litigation—is oftentimes expensive, time-consuming, complex and risky and would not result in a greater benefit to any class.  The Palisades Defendants deny liability, and therefore, Plaintiff would have to overcome challenges to obtain a favorable outcome.  Plaintiff would need to succeed on a motion for class certification and at trial.  Without the Settlement Agreement, the Class Members could wait years for any potential recovery on their alleged claims, the future value of which is unknown, and may continue to suffer harm directly caused by actions of the Defendants.  Plaintiff here was able to retain an attorney to challenge Defendants' practices but many consumers may not even know their rights have been violated.

Moreover, it would be imprudent at this stage of the litigation to presume ultimate success on liability and thereafter.  *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 739 (N.D. Ill. 2014) ("[T]he reality known to first year law students [is] that juries are inherently unpredictable, and there is no such thing as a sure winner either in pretrial proceedings or at trial.") (internal citation omitted)   "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *In re Nationwide Financial Services Litigation*, No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962, at *6 (S.D. Ohio, 2009), quoting,

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), aff'd, 440 F. 2d 1079, 1085-86 (2d Cir.), cert. denied, 404 U.S. 871, 92 S. Ct. 81, 30 L. Ed. 2d 115 (1971); *In re General Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant were facts favoring settlement, which offers immediate benefits and avoids delay and expense).  The proposed settlement is warranted by the length and expense of continued litigation.

The years of additional litigation would unnecessarily increase both the expense of the litigation and the risk for Class Members. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 101.  Plaintiff and the Class Members should not be exposed to the risk of no recovery either because of changes in the law which may impact, in whole or part, a finding of whether Defendants violated the FDCPA, IDCSA, engaged in wrongful legal proceedings or committed fraud or Plaintiff and the class's claims are actionable under all counts alleged in the amended complaint, or at all. As a result, this factor strongly weighs in favor of preliminary approval.

By reaching a favorable settlement at this stage of the litigation, Defendants, Plaintiff and the Class avoid significant expense and delay, and instead ensure a significant and early recovery for the Settlement Class Members. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985); *Isby v. Bayh, supra*, 75 F.3d at 1199; *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000).  The Settlement Agreement provides substantial immediate benefits.

Rather than embarking on years of protracted and uncertain litigation, Plaintiff and her counsel negotiated a Settlement that provides immediate, certain, and meaningful relief to all the

class. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("In short, the settlement provides immediate value to the Class Members that is well within the range of—and may in fact significantly exceed—their expected recovery from proceeding to trial.") In sum, the arguable strength of the Settlement Class Member's claims compares favorably to the terms of the Settlement.

**B.    Continued Litigation Would be Complex, Costly and Lengthy**

Class settlement approval is also favored where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 586. With this in mind, while Plaintiff's counsel strongly believes in the strength of the claims asserted, if this litigation were to continue, it would be lengthy, expensive and involve extensive motion practice, including a motion for class certification (and possibly a motion for decertification), motions for summary judgment and various pretrial motions, as well as the retention of experts, preparation of expert reports, and expert depositions.

Additionally, even if the Settlement Class recovered a judgment at trial in excess of what is provided by the Settlement, post-trial motions and any appellate process would deprive them of any recovery for years, and possibly forever in the event of a reversal.  Instead, the settlement provides to every class member immediate and permanent injunctive relief and certainty that further collection activities on the Great Seneca Company accounts on which any Class Member is an obligor will cease, with no effort on the part of the class members.

**C.    The Reaction of the Settlement Class Members Will be Evaluated at Final Approval**

An analysis of the class members' reaction to the settlement is premature at this juncture. *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 349 (N.D. Ill. 2010). The

Court should analyze this factor at final approval.  There are no other competing class action cases pending against the Palisades Defendants with claims similar to that alleged by Plaintiff.

### D.    Class Counsel Strongly Endorses the Settlement

The opinion of Class Counsel is also relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte,* 805 F.Supp.2d at 586-87; *Isby* at 1200. Many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *Armstrong*, 616 F.2d at 325; *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2nd Cir. 1982); *In re Mexico Money Transfer Litigation, supra*, 164 F. Supp. 2d at 1020.  In fact, courts are "entitled to rely heavily on the opinion of competent counsel," *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Board of School Directors, supra*, 616 F.2d at 325); *Isby v. Bayh, supra*, 75 F.3d at 1200.

In this case, Plaintiff's counsel are experienced in consumer class action litigation. (Appendices B-C).  Based upon their analysis, the relief being offered to Settlement Class Members represents a significant recovery for the Settlement Class, particularly in light of the duration of the Palisades Defendants' alleged conduct in unlawfully seeking to collect, revive and enforce judgments and accounts that are several years old and in the absence of a valid assignment, the Palisades Defendants' anticipated defenses and arguments that they they successfully defeated similar allegations in previous courts and cases, including *Ciesniewski*, and the inherent risks of continued litigation. Class Counsel strongly endorses this settlement and believes it is a great result for the class.

### E.    Further Litigation is Unlikely to Result in Better Recovery to the Class

The last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) (quoting *Armstrong*, 616 F.2d at 325) (internal quotations omitted).  No further investigation, discovery and/or analysis would change Class Counsels' evaluation of this case or their opinion about this settlement.  The parties engaged in multiple rounds of written discovery, contested discovery motions, as well as exchanged voluminous document and electronic discovery productions. The parties were well aware of the strengths and weaknesses of the merits and defenses at the time the parties attended a settlement conference before Magistrate Judge Klump and subsequently reached a settlement agreement.  The resolution of this matter avoids further expense and delay and ensures a recovery for the class members.

Every class action—indeed, every case—involves some level of uncertainty on the merits. *See In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."). Settlements resolve that inherent uncertainty, and are therefore strongly favored by the courts, particularly in class actions.  This action is not unique in this regard, and, absent settlement, the parties would be forced to continue to litigate complex issues, including the propriety of class certification and the class is unlikely to receive a recovery more favorable than that provided by the Agreement. *See Midland Funding, LLC v. Brent*, No. 3:08 CV 1434, 2011 WL 3557020, at *16 (N.D. Ohio Aug. 12, 2011) ("The Fair Debt Collection Practices Act is a set of complex laws with many components. The instant case would be very

expensive to fully litigate, and might take years to finally resolve through the course of trial and appeal, creating additional attorney's fees and reducing any potential payout to the class.")

Courts encourage parties to settle class actions early, without expending unnecessary resources. *McCue v. MB Fin., Inc.*, 15 CV 988, 2015 WL 4522564, at *4 (N.D. Ill. July 23, 2015), quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013) ("early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere").

Here, the parties engaged in three rounds of written discovery requests and responses in this matter, as well as third party discovery. The parties met and conferred concerning discovery issues and briefed a motion to compel. Plaintiff's motion to compel was granted in part, and the Palisades Defendants produced voluminous documents and data identifying over 250,000 accounts where one of the Great Seneca Companies obtained a judgment. The data also included consumer names, state of residence, and payment data. Additional data was also obtained by the Palisades Defendants from their attorney networks. The outreach to the attorney networks revealed some issues that presented risks to continued litigation as well as class certification including: limitation on electronically calculating historical balance information such that manual calculation for historical balance information was available from certain attorney networks; law firms engaged by the Palisades Defendants were out of business; inconsistent data retention policies among the attorney networks; gaps in consumer, payment and judgment renewal data among the attorney networks; inconsistent searchable data fields and search terms for ESI; and hard copy or archived forms of accounts and documents that were the only record available which presented significant cost burdens. In addition, the parties debated the Palisades Defendants' finances, which the Palisades Defendants contend presented another risk factor in continued litigation.

17

Because class members will receive injunctive relief in that the Palisades Defendants will cease Collection Activities on the Great Seneca Company accounts on which the Class Members are obligors, and because the settlement avoids the risk, time, and expense of continued litigation, the settlement is fair, reasonable, and adequate. As a result, the Court should approve the settlement. See *Shulte*, 805 F. Supp. 2d at 585-86 (N.D. Ill. 2011).

## IV.    THE METHOD OF PROVIDING RELIEF IS EFFECTIVE AND TREATS ALL MEMBERS OF THE CLASS FAIRLY

This settlement proposes injunctive relief to all Class Members.  (Appendix A, ¶11.a.).  In addition, the Palisades Defendants will not credit report the Great Seneca Accounts of any Class Member. *Id.* at ¶12. Accordingly, all Class Members will receive the same equitable relief at the same time. Class Members also do not give a release to the Palisades Defendants.  For these reasons, the settlement relief is both effective and treats all members of the Settlement Class fairly.

Rule 23(c)(2)(A) provides that "For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." Notice to the class members is not required under a Rule 23(b)(2) class.  Although no notices will be mailed or exclusions will be permitted, Class Members will have the right to object to the proposed settlement.  Class Members do not need to take any action to remain in the class.

## V.    THE PROPOSED SETTLEMENT CLASS MEETS ALL THE REQUIREMENTS OF RULE 23 FOR CERTIFICATION

Under Federal Rule of Civil Procedure 23(a) the prerequisites to class certification are:

(1)  The class is so numerous that joinder of all members is impracticable,
(2)  There are questions of fact or law common to the class,
(3)  The claims or defenses of the representative parties are typical of the claims defenses of the class, and
(4) The representative parties will fairly and adequately protect the interest of the class.

Further, Federal Rule of Civil Procedure 23(b)(2) provides that a class action is maintainable if the above prerequisites have been met and: "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole;". Plaintiff contends (and the Palisades Defendants do not dispute for purposes of settlement) that as demonstrated below, each of the requirements for certification of the Settlement Class is met.

A.    **Rule 23(a)(1) – Numerosity.**

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is usually 40. *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (72 class members). In the present case, the Palisades Defendants represented that, based on a review of their records, there are in excess of 5,000 individuals in the class.[4] This plainly satisfies the numerosity requirement.

B.    **Rule 23(a)(2) – Commonality.**

Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law or fact. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975). Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944,

---

[4]   As set forth above, the Palisades Defendants will provide the exact number at the next court hearing.

949 (N.D.Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill 1988).  Here, there are questions of law and fact common to the class, such as:

(1)  Whether the Palisades Defendants engaged in a pattern of collecting judgments entered in favor of the Great Seneca Companies without account level assignments;
(2)  Whether engaging in such conduct violates the FDCPA;
(3)  Whether engaging in such conduct violates the IDCSA;
(4)  Whether engaging in such conduct is a wrongful use of legal proceedings; and
(5)  Whether engaging in such conduct constitutes fraud.

C.    **Rule 23(a)(3) – Typicality**.

Rule 23 requires that the claims of the named Plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.  The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members.  Thus, similarity of legal theory may control even in the face of differences of fact.

*De La Fuente v. Stokely Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).  In the instant case, typicality is inherent in the class definition. By definition, each of the Class Members has been subjected to the same practice as the named Plaintiff, namely they are persons against whom one of the Great Seneca Companies obtained a judgment in Indiana State court and the judgment is docketed in Indiana State court only, who were subjected, directly or indirectly to Collection Activities on such judgment, by or on behalf of the Palisades Defendants on or after October 20, 2020.

D.    **Rule 23(a)(4) – Adequacy of Representation**.

The adequacy of representation requirement involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Rosario v. Livaditis*, 963

F.2d 1013, 1018 (7th Cir. 1992).Plaintiff will fairly and adequately protect the interests of the class. Plaintiff retained counsel experienced in handling class actions and claims involving alleged unlawful business practices.   Counsel's qualifications are set forth in <u>Appendix B</u> (Edelman Combs, Latturner & Goodwin, LLC) and <u>Appendix C</u> (Hofer Hagan LLP).   Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

> E.    **Rule 23(b)(2) – Defendants Acted on Grounds Ground Generally Applicable to the Class and Injunctive Relief is Appropriate**.

A class may be certified under Fed. R. Civ. P. 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole;"   A class may be certified if injunctive relief is necessary to address a class-wide injury.   "Colloquially, 23(b)(2) is the appropriate rule to enlist when the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do nor not do something that would benefit the whole class." *Chi. Teachers Union, Local No. 1. v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 441 (7th Cir. 2015).

The Court should preliminarily approve the proposed settlement class.   Plaintiff alleged that Defendants:  commenced legal proceedings to enforce judgments that were entered in lawsuits without an appropriate assignments of the judgment or the debt; attempted to collect judgments in favor of defunct entities without a valid assignment of the judgment or debt; engaged in deceptive acts and practices in that Defendants hired an attorney and otherwise defended legal proceedings that should not have been brought because there was not a valid assignment of the judgment or debt; directed legal process to Plaintiff and her employer when Defendants were not authorized to take such action; in so acting, Defendants committed fraud on the judgment debtors and judicial system, and wrongfully concealed defects in the assignments and collected money to which

Defendants were not entitled.  The Palisades Defendants deny all allegation and claims herein. Because the Plaintiff alleged that the Palisades Defendants have acted consistently with respect to the class in obtaining and enforcing judgments on the Great Seneca Company account without appropriate assignments, certification of a Rule 23(b)(2) class is appropriate.  The injunctive relief provided in the Agreement will end Defendants' collection activities and practices on the Great Seneca Company accounts.   Defendants will not receive a release from the Class Members and but will be enjoined from further collection on these Great Seneca Company accounts.  See also *In re NCAA Student-Athlete Concussion Injury Litig*., 332 F.R.D. 202 (N.D. Ill. 2019) (preliminarily certifying settlement class under Fed. R. Civ. P. 23(b)(2) for NCAA alleged failure to adopt rules and regulations to safeguard student athletes from sustaining concussion injuries).

WHEREFORE, Plaintiff respectfully requests that the Court enter an order in the form of Exhibit 1 to the Agreement, which (i) preliminarily approves the Agreement; (ii) preliminarily certifies the class mentioned above for settlement purposes only; (iii) appoints Dawn Beutel-Zachery as Class Representative and Edelman, Combs, Latturner & Goodwin, LLC and Hofer Hagan, LLP as class counsel; (iv) sets dates for Class Members and federal and state officials to object; and (v) schedules a hearing for final approval of the Agreement.

Respectfully submitted,

/s/ Heather Kolbus
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1800
Chicago, IL   60603
(312) 739-4200


Keith R. Hagan

Steven R. Hofer
HOFER HAGAN LLP
8888 Keystone Crossing, Suite 1300
Indianapolis, IN  46240
(317) 531-4575

## <u>CERTIFICATE OF SERVICE</u>

I, Heather Kolbus, certify that on November 13, 2024, I caused a true and accurate copy of the foregoing document to be filed via the Court's CM/ECF system which caused notice to be sent via email to all counsel of record.


<u>/s/ Heather Kolbus</u>
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1800
Chicago, IL   60603
(312) 739-4200